**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GUTIERREZ and STEPHANIE CRUZ, | **FIRST AMENDED COMPLAINT** |
| *Plaintiffs,* | |
| *v.* | No: 2:17-cv-6953(SJF)(AKT) |
| EAST HILLS CHRYSLER-PLYMOUTH, INC.; CCAP AUTO LEASE, LTD; SANTANDER CONSUMER USA INC. d/b/a CHRYSLER CAPITAL; PLATINUM AUTO LEASING & SALES INC f/k/a KJM AUTO SALES INC.; and DOMINICK CRUZ, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## INTRODUCTION

1.      Plaintiffs Michael Gutierrez and Stephanie Cruz, individual consumers, bring this action for money damages, injunctive relief, and declaratory judgment, seeking redress for unlawful practices relating to his purchase and financing of an automobile.

2.      Plaintiffs allege violations of the Consumer Leasing Act, 15 U.S.C. §§ 1667 *et seq.* ("CLA"), Federal Equal Credit Opportunity Act ("ECOA") 15 U.S.C. § 1691, *et seq.*, the New York Motor Vehicle Retail Lease Act, N.Y.P.P.L. § 330 *et seq.*, New York General Business Law § 349, and for fraud and Rescission/Declaration of No Liability on Loan.

3.      Plaintiff also asserts a common law claim for fraud.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 15 U.S.C. § 1640 (TILA) and 15 U.S.C. § 1691e (ECOA).

1

5.     This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

6.     This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and several of the defendants maintain offices, transact business, and are otherwise found in this district.

## THE PARTIES

8.     Plaintiff Michael Gutierrez is and at all relevant times has been a resident of Ozone Park, New York.

9.     Plaintiff Stephanie Cruz is and at all relevant times has been a resident of the Bronx, New York.

10.     Mr. Gutierrez and Ms. Cruz have, at all relevant times, been boyfriend and girlfriend.

11.     Defendant East Hills Chrysler-Plymouth, Inc. ("the Dealership") is the entity listed as the lessor of the vehicle at issue on the motor vehicle lease agreement referenced in the instant complaint and is the trade name of the auto dealership located in Greenvale, New York (Nassau County) that leased Plaintiffs the Vehicle.

12.     Defendant Santander Consumer USA Inc. d/b/a Chrysler Capital ("Santander" or "Chrysler Capital") is an Illinois corporation, duly authorized and qualified to do business in New York.

13.     Defendant CCAP Auto Lease Ltd. ("CCAP") is a Delaware Corporation duly authorized and qualified to do business in New York.

14.     Defendant Platinum Auto Leasing & Sales Inc f/k/a KJM Auto Sales Inc. ("Platinum") is a New York Corporation duly authorized and qualified to do business in New York.

2

15.     Defendant Dominick Cruz ("Defendant Cruz") is an individual employed by the Platinum or a principle at Platinum.

16.     Defendant Cruz works at Platinum's location in Queens County, New York, and, upon information and belief, resides in Queens County, New York.

## FACTS

12.     This dispute arises from the Dealership's issuance of a lease for a 2017 Jeep Grand Cherokee, VIN# 1C4RJFBG8HC699020 (the "Vehicle").

13.     The Motor Vehicle Lease Agreement – Closed End ("Lease Agreement") is dated December 8, 2016 and purports to obligate Ms. Cruz to a 39-month lease term.

14.     The Lease Agreement is a Chrysler Capital form and, on its face, states that the Lease Agreement is assigned to CCAP.

15.     According to chryslercapital.com, "Chrysler Capital is a registered trademark. . . licensed to Santander Consumer USA Inc.  Lease agreements are owned by CCAP Auto Lease Ltd and serviced by Chrysler Capital".

16.     Upon information, CCAP is a subsidiary or otherwise related to SCUSA and SCUSA controls CCAP.

17.     Despite the fact that the Lease Agreement purports to obligate Ms. Cruz on the lease, she has no such obligation.

18.     To wit, Ms. Cruz's signature on the Lease Agreement was forged, she did not agree to the Lease Agreement, she was never present at the Dealership or at Platinum, and she never communicated with any person or representative from the Dealership or Platinum prior to the consummation of the Lease Agreement.

19.     Moreover, Ms. Cruz does not have a driver's license and could not legally operate the Vehicle.

20.     Thus, the Dealership, Platinum and Defendant Dominick Cruz (who is not related to Plaintiff Stephanie Cruz) have fraudulently sought to obligate to Ms. Cruz to the Lease Agreement without her consent.

21.     Prior to the Dealership's issuance of the Lease Agreement containing Ms. Cruz's forged signature, Mr. Gutierrez discussed obtaining an auto lease *for himself* with Defendant Dominick Cruz (who is not related to Plaintiff Stephanie Cruz).

22.     Mr. Gutierrez was referred to Defendant Cruz through a personal acquaintance.

23.     Mr. Gutierrez initially spoke to Defendant Cruz and then corresponded with him through text messages.

24.     Defendant Cruz explained to Mr. Gutierrez that he would help him obtain a "good car for a good price" despite Mr. Gutierrez's sub-optimal credit.

25.     Mr. Gutierrez initially expressed his desire to obtain a Honda Accord or similar vehicle.

26.     Defendant Cruz indicated he would be able to come up with some options through his relationships with automobile dealerships.

27.     Based on these representations, Mr. Gutierrez provided his personal financial information to Platinum (acting through Defendant Cruz).

28.     Upon information and belief, Platinum and/or Defendant Cruz and/or the Dealership applied for credit on behalf of Mr. Gutierrez and/or pulled and/or reviewed Mr. Gutierrez's credit history.

29.     However, neither Platinum, Defendant Cruz, the Dealership, nor anyone else provided any disclosures concerning the denial of credit to Mr. Gutierrez.

30.     Platinum advised Mr. Gutierrez that his credit history was sub-optimal, which would limit the leases and/or loans for which he could qualify.

31.    Within days of his first contact, Mr. Gutierrez subsequently met with Defendant Cruz at Platinum's location in Queens County, New York.

32.    At Platinum's location, Mr. Gutierrez and Mr. Cruz reviewed vehicles on Mr. Cruz's computer for possible lease.

33.    Defendant Cruz presented several lease options to Mr. Gutierrez.  Mr. Gutierrez eventually decided upon a 2016 Honda Accord Sport in Black with an initial payment of $2,500 and payments of $520 per month over a 36-month lease term.

34.    The following day, during a follow-up conversation between Defendant Cruz and Mr. Gutierrez, Defendant Cruz told Mr. Gutierrez that he would be able to qualify for a lease for a better vehicle if he was able to find someone to serve as a guarantor or co-signor.

35.    Subsequently, at the request of Mr. Gutierrez, Ms. Cruz agreed to see if she could qualify as a guarantor.

36.    Ms. Cruz provided her personal financial information to Platinum through Mr. Gutierrez for the purpose of checking of her credit worthiness.

37.    However, Ms. Cruz never agreed to consummate any transaction, and did not agree to be obligated under the Lease Agreement or any other contract.

38.    After Mr. Gutierrez provided Ms. Cruz's financial information to Defendant Cruz, Platinum informed Mr. Gutierrez (through Defendant Cruz) that Ms. Cruz's credit was sufficient to qualify as a guarantor and the Vehicle could be leased from the Dealership.

39.    Mr. Gutierrez and Defendant Cruz two agreed upon the principal terms of a lease agreement, including, inter alia, a down payment, monthly payment and lease term.  However, neither Platinum, the Dealership, nor any other party provided Mr. Gutierrez with a written lease agreement.

40.     Following their agreement on terms, Mr. Gutierrez paid $2,500 as a down payment to Platinum with the understanding the full amount of these funds would be transferred to the lessor of the Vehicle.

41.     Despite Defendant Cruz's assurance to Mr. Gutierrez that this down payment would cover, *inter alia*, the first two months of lease payments, the down payment was not applied in this manner.

42.     Indeed, the Lease Agreement reflects only $1,645.06 due at signing and makes no reference to the $2,500 Mr. Gutierrez actually paid.

43.     Prior to consummating the lease, Mr. Gutierrez was not provided with any lease disclosures.

44.     Rather, Mr. Gutierrez's brother, Robert Medina, was provided with the disclosures upon picking up the Vehicle from Platinum and Mr. Gutierrez first saw the disclosures when he received them from his brother.

45.     It was at that time that Mr. Gutierrez and Ms. Cruz first learned that the Vehicle had not been leased in Mr. Gutierrez's name, and instead had been leased in Ms. Cruz's name under her forged signature.

46.     The Lease Agreement lists a 39-month term, a monthly payment of $547.56 and total payments of $22,847.34.

47.     Upon receipt of the Vehicle and reviewing the terms of the Lease Agreement, Mr. Gutierrez repeatedly demanded that Defendant Cruz, Platinum and the Dealership correct the lessee identified in the Lease Agreement to reflect that he was the lessee, pointing out that Ms. Cruz had neither agreed to lease the Vehicle in her name nor signed the documents.

48.     After seeking to have Platinum and the Dealership correct the Lease Agreement for several weeks following receipt of the Vehicle, Defendant Cruz stopped responding to Mr. Gutierrez's calls and texts.

49.     Nevertheless, Ms. Cruz and Mr. Gutierrez continued to complain that Ms. Cruz had been misidentified as the lessee on the Lease Agreement to Defendant Cruz and other representatives at Platinum, including Defendant Cruz's father, who is, upon information and belief, the owner of Platinum.

50.     Despite these protestations and the clear forgery on the Lease Agreement, Defendant Cruz, Platinum, and the Dealership refused to rectify the situation.

51.     Ms. Cruz called SCUSA in early 2017 (approximately February/March 2017) and explained the fraud outlined herein, *i.e.* that she had never agreed to purchase the Vehicle, that her signature was forged and that, in fact, she did not even have a driver's license.

52.     SCUSA's customer service representatives were unhelpful and continued to demand payment.

53.     Although these customer service representatives informed Ms. Cruz that someone from SCUSA would investigate the situation and be in touch with her to discuss further, this never occurred.

54.     Despite this outrageous and fraudulent behavior on the part of Platinum, Dealership and Defendant Cruz, Mr. Gutierrez continued to make payments from December 2016 through approximately April/May of 2017.

55.     When Mr. Gutierrez stopped making payments, SCUSA repeatedly called Ms. Cruz demanding payments.

56.     On 3-4 occasions, Ms. Cruz explained the fraud set forth herein to SCUSA's customer representatives.

57.     Each time, she was brushed off (including being told that SCUSA was "sorry" to hear of the situation and would "look into it"), and SCUSA continued to demand payment.

58.     Again, no one ever contacted Mr. Gutierrez to discuss the fraud.

59.     Prior to initiating this litigation, Mr. Gutierrez and Ms. Cruz again reached out to SCUSA, this time in writing through their undersigned counsel, advising SCUSA of the forgery and requesting that the parties work together to resolve the situation without the need for litigation.

60.     SCUSA responded by repossessing the Vehicle.

61.     Following the repossession, Ms. Cruz again alerted SCUSA that a fraud had taken place (i.e. that she did not agree to lease the vehicle, that her signature was forged, and that she didn't have a driver's license).  However, this was again to no avail.

62.     Indeed, following the repossession, SCUSA responded by sending Ms. Cruz a letter demanding $29,793.98 as a purported "early termination liability."

63.     Notably, $29,793.98 is greater than the entire amount owed under the purported lease, from inception.

64.     Put differently, had Plaintiffs made all monthly payments through the life of the Lease Agreement they would have had no further obligation to SCUSA, but Ms. Cruz now finds herself being dunned for $29,793.98 despite the fact that the Vehicle has been returned to SCUSA earlier than would otherwise be the case and has thus depreciated less.

65.     As such, the amount sought by SCUSA (on behalf of CCAP) is patently unreasonable in the light of the anticipated or actual harm caused by the delinquency, default, or early termination, and is thus barred under the Consumer Lease Act, *infra*.

66.     The amount sought by SCUSA also exceeds the amount permitted under New York Personal Property Law Sec. 341.

67.     SCUSA's insistence on (more than) full payment from the consumer despite the fact that it has been informed that the Lease Agreement is forged and despite the fact that CCAP is unquestionably subject to all claims against the Dealership is not unusual.

68.     Rather it is part of a well-established pattern and practice.

69.     To wit, after consumers inform SCUSA that fraud and other illegal activity were employed by auto dealerships in the creation of their alleged loan obligation, SCUSA regularly and consistently refuses to assist them in anyway, demands full payment under the terms of the fraudulently created loan or lease, and ultimately, without any good faith claim to right, repossesses the consumer's vehicle when the consumer is unable or unwilling to continue making payments under the fraudulent loans.

70.     As part of this pattern and practice of misconduct, SCUSA either outright refuses to investigate or, as in Plaintiffs' case, falsely states to consumers that it will investigate with no intention of conducting a bona fide, good faith investigation.

71.     With regard to a different automobile dealership, SCUSA's responses to consumer allegations of fraud are public record.  e.g. *Park v. Santander Consumer USA, Inc.*, (15-cv-5374) (EDNY), Complaint, at ¶¶ 183(a) through (g) (listing consumers with similar experiences); 184-187; *Ahmed v. Eltouby and Santander Consumer USA, Inc.* (15-cv-284), at ¶¶ 247-256.

72.     SCUSA has shown over and over again that no amount of information showing actual fraud, forgery, and evidence of other crimes and wrongdoing committed in the origination of the loans assigned to it, will deter SCUSA from enforcing the terms of the loans or from repossessing the subject vehicles once consumers, like Plaintiff, are unwilling or unable to continue payments.

73.     Plaintiffs expressly reserve the right to amend the instant complaint to allege all claims relating to SCUSA' response to consumer complaints of dealer fraud/dishonesty/sharp practices on a class basis.

74.     Plaintiffs likewise expressly reserve the right to amend the instant complaint to allege all claims regarding SCUSA's calculation of lease termination and early termination liability, as well as the sufficiency of its disclosures regarding this purported liability, on a class basis.

75.     To the extent any Defendant herein is not liable in its own right, said Defendant is liable as an assignee (e.g. pursuant to the FTC Holder Rule and/or state law) and/or based on agency principles.

76.     As a result of the misconduct set forth herein, Plaintiffs have suffered pecuniary harm, damage to credit, emotional distress, sleeplessness, acute stress/anxiety, pain and suffering.

77.     Indeed, due to the acute stress and anxiety of the situation set forth herein, Mr. Gutierrez was hospitalized due to tachycardia in July 2017.

78.     In addition, Ms. Cruz's credit has been damaged, and at least one of her credit accounts (a Care Credit account with Synchrony Bank) has been closed as a result.

## COUNT I
## CONSUMER LEASING ACT 15 U.S.C. § 1667, et seq. ("TILA")

79.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

80.     The Dealership is listed as Lessor on the Lease Agreement and is a "lessor" as that term is defined at 15 U.S.C. § 1667(3) and Regulation M.

81.     SCUSA (CCAP's "servicer" and the entity whose lease form was used in the transaction), CCAP (an entity related to SCUSA which is listed on the face of the SCUSA form as assignee), the Dealership, Platinum and Defendant Cruz were substantially involved in the transaction and are lessors pursuant to 15 U.S.C. § 1667(3).

82.     Both Mr. Gutierrez and Ms. Cruz are "lessees" for purposes of entitlement to all disclosures required under the Consumer Leasing Act and with regard to entitlement to the Act's protections.

83.     Notwithstanding the foregoing, both Plaintiffs expressly deny any liability or obligation under the forged Lease Agreement.

84.     The Lease Agreement is a contract (albeit a forged one) in the form of a lease for the use of personal property by a natural person for a period of time exceeding four months, and for a total contractual obligation not exceeding $50,000 primarily for personal, family or household purpose and as such is a "consumer lease" as that term is defined at 15 U.S.C. § 1667(1).

85.     Defendants failed to provide the Plaintiffs, prior to consummation of the lease, any of the disclosures required pursuant to 15 U.S.C. 1667a.

86.     Indeed, Platinum and the Dealership failed to provide these disclosures to either Plaintiff at any time, and instead provided the disclosure after the sale only to Mr. Gutierrez's brother.

87.     SCUSA provided the disclosures for the first time in response to a request, post-sale, from Ms. Cruz, providing the disclosures in late summer 2017.

88.     The amounts sought by Defendants in connection with the purported "early termination" of the Leasing Agreement exceed the amounts permissible under 1667(b) and are unreasonable in the light of the anticipated or actual harm caused by any delinquency, default or early termination.

89.     As a result of these violations, Plaintiffs are entitled to actual damages, statutory damages, costs and attorney's fees.

**COUNT II**
**FEDERAL EQUAL CREDIT OPPORTUNITY ACT ("ECOA")**
**15 U.S.C. § 1691, *et seq*.**
**(PLAINTIFF GUTIERREZ ONLY)**

90.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

91.     As set forth above, Defendant Cruz, Platinum, and/or the Dealership informed Mr. Gutierrez that his credit was insufficient to purchase the Vehicle.

92.     This action constituted a denial of credit.

93.     The failure to provide to Mr. Gutierrez any written statement of reasons for the denial of credit to Plaintiff and to provide the disclosures mandated by 15 U.S.C § 1691(d) (2) (b) violated the ECOA.

94.     As a result of the above alleged ECOA violations, Mr. Gutierrez has suffered substantial actual damages, including imposition of higher costs for the Vehicle's purchase and financing, the loss of his rights to determine the basis for credit denial, loss of the credit itself, frustration, anger, and embarrassment.

95.     As a result of the above alleged ECOA violations, Defendant Cruz, Platinum, and the Dealership are liable to Mr. Gutierrez for statutory damages, actual damages, punitive damages of $10,000.00 against each Defendant pursuant to 15 U.S.C. § 1691e(b) and for attorney's fees and costs pursuant to 15 U.S.C. § 1691e(d).

## COUNT III
## NEW YORK MOTOR VEHICLE RETAIL LEASING ACT (MVRLA)
### N.Y. Personal Property Law § 330, et. seq.

96.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

97.     Both Mr. Gutierrez and Ms. Cruz are "retail lessees"/"lessees" pursuant to NYPPL § 331(2) for purposes of entitlement to all disclosures required under New York's Motor Vehicle Retail Leasing Act, and with regard to entitlement to the Act's protections.

98.     Notwithstanding the foregoing, both Plaintiffs expressly deny any liability or obligation under the forged Lease Agreement.

99.     The Defendants are "retail lessors"/"lessors" as defined at NYPPL § 331(3).

100.    The transaction as described above involved a "retail lease" and "retail lease agreement" within the meaning of NYPPL § 331(4) and (5).

101.    The MVRLA required that Defendants provide all lessors with the Lease Agreement.  *See* NYPPL § 337(3).

102.   Defendant Cruz, Platinum, and the Dealership never provided Ms. Cruz or Mr. Gutierrez with the Lease Agreement.

103.   SCUSA and CCAP never provided Mr. Gutierrez with the Lease Agreement.

104.   SCUSA and CCAP first provided Ms. Cruz with the Lease Agreement only at her request some 7-8 months after the delivery of the Vehicle to Mr. Gutierrez.

105.   The MVRLA expressly incorporates all CLA disclosure requirements.  NYPPL § 337(5)(a).

106.   As set forth above, these requirements were not met.

107.   Indeed, as set forth above, none of these disclosures were provided at the time of consummation of the leasing of the Vehicle.

108.   The fees now sought by SCUSA on behalf of CCAP from Ms. Cruz exceed the amounts permitted under NYPPL § 341 ("Restriction on early termination liability").

109.   For all of the reasons stated herein, Plaintiffs are entitled to actual damages, a civil penalty, attorney's fees and costs, pursuant to MVRLA, NYPPL § 346.

## COUNT IV
## DECEPTIVE CONSUMER PRACTICES
## NEW YORK GENERAL BUSINESS LAW § 349
## (AS TO SCUSA AND CCAP, INC.)

110.   Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

111.   Each of the deceptive acts and practices set forth above constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

112.   To wit, wholly apart from the inadequacy of the lease disclosures provided to Plaintiffs Defendant SCUSA's acts and practices on behalf of itself and CCAP, all of which occurred after the nominal assignment of the lease, constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in this

state, unlawful, independent of whether these acts and practices constitute violations of any other law.

113.    These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

114.    Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

115.    SCUSA, after taking assignment of or taking on servicing of loans and leases, routinely insists on its right to full payment despite the fact that it knows or should know that the loan and lease obligations assigned were originated through fraud and other criminal activity.

116.    As part of this scheme, SCUSA refuses to make any good faith investigation into allegations of fraud, either claiming/promising to do an investigation it never carries out and never has any intention of carrying out and/or instead insisting that any resolution must be worked out with the Dealership and not with SCUSA or CCAP.

117.    As a part of this scheme, SCUSA routinely, falsely, and deceptively threatens consumers with repossession for non-payment under the contracts in question or, as in the instant case, actually repossesses the consumers' vehicles, when SCUSA knows or should know that it does not have a good faith right to repossession.

118.    These false and deceptive consumer oriented actions misrepresent the actual rights and obligations of consumers, SCUSA and CCAP.

119.    These false and deceptive consumer oriented actions and representations serve to convince consumers that they have no options but to suffer repossession or continue paying the

full amounts under the loans, and result in consumers making payments despite having defenses to payment (e.g. forgery of the underlying contract).

120.    Moreover, these false and deceptive consumer oriented actions result in all Defendants receiving and retaining payments from the fraudulent and criminal transactions at Platinum and the Dealership or, like Plaintiffs, suffer repossession.

121.    SCUSA's conduct and statements described above are materially misleading, as SCUSA on behalf of itself and CCAP knowingly and willfully asserts its rights to property and money that it knows or should know it does not have any right to.

122.    As a result of these violations of NYGBL § 349, Plaintiffs suffered and continue to suffer pecuniary and non-pecuniary harm.

123.    Defendants' violations were willful and knowing and committed in bad faith.

124.    For these reasons, Plaintiffs are entitled to actual damages, three times the actual damages up to $1000, costs and reasonable attorney's fees pursuant to NYGBL § 349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

**COUNT V**
**DECEPTIVE CONSUMER PRACTICES**
**NEW YORK GENERAL BUSINESS LAW § 349**
**(AS TO ALL DEFENDANTS)**

125.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

126.    Each of the deceptive acts and practices set forth above constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

127.    To wit, the lease origination process detailed herein, in which Mr. Gutierrez attempted to enter into a lease with Defendants and instead, was provided with a Vehicle pursuant to a forged lease bearing Ms. Cruz's name, constitutes a deceptive business practice.

128.     The misappropriation of both Mr. Gutierrez down payment and the charging of the subsequent "insurance broker fee" likewise constitute deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

129.     Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

130.     Moreover, these false and deceptive consumer oriented actions result in all Defendants receiving and retaining payments from the fraudulent and criminal transactions at the Dealership or, like Plaintiffs, suffer repossession.

131.     As a result of these violations of NYGBL § 349, Plaintiffs suffered and continue to suffer pecuniary and non-pecuniary harm.

132.     Defendants' violations were willful and knowing and committed in bad faith.

133.     For these reasons, Plaintiffs are entitled to actual damages, three times actual damages up to $1000, costs and reasonable attorney's fees pursuant to NYGBL § 349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

**COUNT VI**
**FRAUD**

134.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

135.     As set forth above, Defendants defrauded Plaintiffs, *inter alia*, by forging Ms. Cruz's name on the Lease Agreement.

136.     Defendant Cruz, Platinum and the Dealership intended to deceive Plaintiffs.

137.     Plaintiffs believed and justifiably relied upon the Defendants' representations, i.e. they had no reason to know or expect that when Ms. Cruz provided her personal information in

connection with potentially serving as a guarantor for Mr. Gutierrez, her identity would be stolen by Defendants and her name forged on the Lease Agreement, making her the sole lessee.

138.    The results of Defendants' fraud are particularly egregious because Ms. Cruz does not have a driver's license and cannot legally operate an automobile.

139.    Had the Defendants been truthful about the sales terms and the contents of Lease Agreement and had the Defendants not made these fraudulent misrepresentations, Plaintiffs would have walked away and avoided the transaction entirely.

140.    As a result of such reliance, Plaintiffs sustained actual damages (including both pecuniary and non-pecuniary damages).

141.    Moreover, the Defendants' conduct was egregious on every level, involving outright forgery.  In sum, it was a virtually larcenous scheme.

142.    As a result of Plaintiffs' reasonable reliance upon the Defendants' misrepresentations, Plaintiffs are entitled to actual damages as set forth above, punitive damages, and costs.

**COUNT VII**
**THEFT OF IDENTITY**
**N.Y. GEN. BUS. LAW § 380-s and 380-l**

143.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

144.    N.Y. Gen. Bus. Law § 380-s prohibits any person, firm, partnership, corporation, or association or employee thereof shall knowingly and with the intent to defraud, obtain, possess, transfer, use, or attempt to obtain, possess, transfer, or use credit, goods, services or anything else of value in the name of another person without his or her consent.

145.    Defendant Cruz, Platinum, and the Dealership and violated this provision by knowingly and willfully creating a Lease Agreement in Ms. Cruz's name, forging her signature on it and transferring it to SCUSA and CCAP.

146.     SCUSA and CCAP violated this provision by knowingly and demand payment from Ms. Cruz after being informed that the Lease Agreement was created without Ms. Cruz's consent and by means of forgery of her signature and by repossessing the Vehicle on the basis of the contractual provisions set forth in the Lease Agreement, again, after being informed that the Lease Agreement was created without Ms. Cruz's consent and by means of forgery of her signature.

147.     The Defendants' violations of the aforementioned provisions predictably resulted in the transmission of false information to one or more credit reporting agencies (including inter alia, TransUnion) and this information would not otherwise have been provided to any credit reporting agency.

148.     As a result of these violations, pursuant to § 380-l, Defendants are liable to Plaintiffs for actual damages, punitive damages, attorney's fees and costs.

### COUNT VIII
### RESCISSION/DECLARATION OF
### NO LIABILITY FOR LEASE

149.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

150.     As set forth above, the Lease Agreement is forged.

151.     As also set forth above, Plaintiffs would not have involved themselves in the transaction but for Defendants' fraudulent conduct.

152.     Defendants' misconduct was material and willful.

153.     Defendants' breach was also so substantial and fundamental that it strongly tends to defeat the purpose of the contract.

154.     Damages will not afford Plaintiffs a complete and adequate remedy and the status quo may be substantially restored by equitable relief.

155.    Plaintiffs are entitled to and hereby rescind their contract to purchase the Vehicle and all related contracts and services.

156.    As a result of these violations, Plaintiffs are entitled to rescission of the retail installment sale contract, restitution of all monies paid thereunder, and costs and expenses, as well as a declaration that Plaintiffs are not liable under the loan, including *inter alia*, for any purported termination fee.

**COUNT IX**
**VIOLATION OF AUTOMOBILE BROKER LAW**
**N.Y. GEN. BUS. LAW § 742**

157.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

158.    Plaintiffs are consumers as defined by N.Y. Gen. Bus. Law § 736(2).

159.    Defendant Cruz and Platinum are in the automobile broker business as defined in NYGBL § 736(2).

160.    Defendant Cruz and Platinum did not provide Plaintiffs with a written contract including the date, street address of Defendant Cruz and Platinum, Vehicle price, itemized list of charges, commission amount, written disclosure of the amount of any fee, commission or other consideration paid or expected to be paid by the Dealership, SCUSA or CCAP to Defendant Cruz and Platinum in connection with the Lease Agreement, with a disclosure signed by the Dealership, or with other disclosures required pursuant to NYGBL § 738(1) and §741-b.

161.    Defendant Cruz and Platinum did not provide Plaintiffs with a copy of the Lease Agreement pursuant to NYGBL § 738(4).

162.    Defendant Cruz and Platinum did not provide Plaintiffs with a Notice of Cancellation informing them they had a right to cancel their agreement with Defendant Cruz and Platinum pursuant to NYGBL § 738(2).

19

163.    Plaintiffs were not provided with a disclosure stating the amount of any fees, commissions or other valuable consideration Defendants Cruz and Platinum expected to receive from the Dealership, SCUSA, CCAP or any other person or entity for effecting the lease transaction pursuant to NYGBL 741-B.

164.    To the extent any such fees, commissions or other valuable consideration were unknown, Defendant Cruz and Platinum were required to provide a disclosure to Plaintiffs stating: (a) whether they had a contract with any dealer, lessor or any other person or entity for the provision of assistance in effecting a lease transaction; and (b) whether they would be compensated by the dealer, lessor or any other person or entity for any assistance in effecting such lease transaction pursuant to NYGBL 741-B, but no such disclosure was provided to Plaintiffs.

165.    Defendant Cruz and Platinum also collected an undisclosed fee or commission in advance from Plaintiffs prior to performance of any services in violation of NYGBL § 737.

166.    Defendant Cruz and Platinum misrepresented the nature of the services to be performed, the time within which the services would be performed, the cost of the services to be performed, and their ability to perform the services sought, thereby engaging in an unlawful and deceptive trade practice pursuant to NYGBL § 741.

167.    To the extent Plaintiffs had any agreement with Defendant Cruz and Platinum, the agreement did not comply with the applicable provisions of Section 35-B of the New York General Business Law.

168.    Any such agreement is therefore void and unenforceable against Plaintiffs pursuant to NYGBL § 739.

169.    Furthermore, pursuant to § 739, the protections afforded Plaintiffs as consumers in automobile broker transactions cannot be waived.

20

170.    For these reasons, pursuant to NYGBL § 742, Plaintiffs are entitled to recover an amount

not to exceed three times their actual damages as well as their reasonable attorney's fees.


WHEREFORE, Plaintiffs respectfully demand judgment against Defendants as follows:


a.    COUNT I, CONSUMER LEASING ACT, judgment against Defendants for statutory
damages, actual damages, attorney's fees, litigation expenses and costs, declaratory
judgment that they have violated the CLA and Regulation M, and such other or
further relief as the Court deems appropriate;

b.    On COUNT II, Equal Credit Opportunity Act ("ECOA"), judgment against
Defendants, statutory damages, actual damages, punitive damages, reasonable
attorney's fees, costs and expenses, and declaratory judgment that Defendants have
violated ECOA;

c.    On COUNT III, VIOLATIONS OF MVRLA, declaratory judgment against
Defendants that they have violated MVRLA, actual damages, a civil penalty,
attorney's fees and costs.

d.    On COUNT IV, NYGBL § 349, judgment against Defendants SCUSA and CCAP,
injunctive relief, actual damages, three times the actual damages up to $1,000,
punitive damages, costs and reasonable attorney's fees, declaratory judgment that
Defendants have engaged in deceptive conduct, and such other or further relief as the
Court deems appropriate;

e.    On COUNT V, NYGBL § 349, judgment against all Defendants, injunctive relief,
actual damages, three times the actual damages up to $1,000, punitive damages, costs
and reasonable attorney's fees, declaratory judgment that Defendants have engaged in
deceptive conduct, and such other or further relief as the Court deems appropriate;

f.    On COUNT VI, FRAUD, judgment against Defendants, actual damages, punitive
damages, and costs;

g.    On COUNT VII, N.Y. GEN. BUS. LAW § 380-s and § 380-1, judgment against
Defendants, actual damages, punitive damages, costs and attorney's fees;

h.    On COUNT VIII, RESCISSION/DECLARATION OF NO LIABILITY ON LOAN,
judgment against Defendants, rescission of the retail installment sale contract,
restitution of all monies paid thereunder, and costs and expenses, as well as a
declaration that Plaintiffs are not liable under the loan, including *inter alia*, for any
purported termination fee;

i.    On COUNT IX, N.Y. GEN BUS. LAW §§ 739 and 742, judgment against all
Defendants, actual damages, three times the actual damages, costs and reasonable

attorney's fees, declaratory judgment that all agreements between Plaintiffs and Defendants, including the Lease Agreement, are void and enforceable and Defendants have engaged in deceptive conduct, and such other or further relief as the Court deems appropriate; and

j.   Such other and further relief as law or equity may provide.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: June 21, 2018

Respectfully Submitted,

*/s/ Evan S. Rothfarb*
Evan S. Rothfarb
Schlanger Law Group LLP
9 East 40th St. – Suite 1300
New York, NY 10016
T:  212.500.6114
F:  646.612.7996
erothfarb@consumerprotection.net

*Attorneys for Plaintiff*

22